MALLETT *v.* LAMBETH

No. 40709          April 7, 1958          101 So. 2d 649

*Butler, Snow, O'Mara, Stevens & Cannada,* Jackson, for appellant.

*Crisler, Crisler & Bowling,* Jackson; *George W. Haynes,* Utica, for appellee.

ROBERDS, P. J.

On February 4, 1951, Mallett, the appellant, entered into a written contract with the City of Greenville, Mississippi, under which Mallett was to perform the architectural and engineering services in the construction of a large manufacturing plant at Greenville to be occupied and used by Alexander Smith & Sons Carpet Company in the manufacture of carpets and other allied goods and articles. The contract imposed upon Mallett the duty to prepare all drawings, plans and specifications needed

in the construction of the plant and its appurtenances, and also the duty to supervise such construction. It was estimated that the total cost of the plant would be nearly $5,000,000. Mallett was to receive as compensation for his services a certain percentage of the cost of the construction of the plant.

On April 24, 1951, Mallett and Lambeth, the appellee herein, entered into a written contract under which Lambeth, as an associate with Mallett, was obligated to prepare the plans and specifications for, and supervise the construction of, the mechanical system for the plant, such as plumbing, heating, air conditioning, etc. Lambeth was to be paid for his services a percentage of the fees which would be paid to Mallett by the City of Greenville. Mallet was to advance to Lambeth money with which to pay for supplies, office rent, office force and assistants as needed in the performance of the work which Lambeth was obligated to do.

The work proceeded under the contract between Mallett and Lambeth without apparent serious conflict between them until July 20, 1953. On that day Mallett wrote Lambeth a letter, making certain complaints as to the manner of the performance of the contract by Lambeth. The main complaint was that Lambeth had not spent sufficient time on the job at the site of the work in Greenville as called for by the contract, according to its interpretation by Mallett. The letter demanded that Lambeth give assurances of immediate compliance with the demands made by Mallett in the letter, and, in effect, gave notice that he would terminate the contract unless such assurances should immediately be given. The letter was postmarked at 4:30 P. M., July 20, 1953, and was received by Lambeth at 2:10 P. M. on July 21st.

In the meantime, at one minute past twelve o'clock noon, July 21st, 1953, Mallett sent a telegram to Lambeth reading as follows: "In accordance with the terms of our letter of yesterday your contract with this firm is

terminated at noon today, and you are relieved of further duties thereunder.''

On July 22, 1953, Lambeth, through his attorneys, wrote Mallett a letter. In this letter he said that he had faithfully performed his contract and that Mallett had no just reason for undertaking to terminate the agreement without his consent. He stated that he did comply with this contract and that he had contacted the chief engineer in charge of construction of the plant who had assured him that the attendants on the job proposed by Lambeth to the chief engineer ''will suffice in all respects.''

Other letters were exchanged between Mallett and Lambeth, and their attorneys, setting forth their contentions as to their respective rights and duties under the contract, until a final letter from Mallett dated August 13, 1953, undertaking to finally terminate the contract, and giving notice that Mallett himself would assume the duties and responsibilities of taking over the work and completing the contract. Mallett did take over the contract and finished the job.

Lambeth filed the original bill in this cause, alleging the execution of the two foregoing contracts, and asserted that he had duly performed his contract with Mallett and that Mallett was indebted to him but he did not know the exact amount. He prayed for a discovery and a personal decree against Mallett for such amount as might be justly due and owing to him. Mallett, in his answer, admitted the execution of the City of Greenville and the Lambeth contracts, and denied Lambeth had complied with his contract and denied that he was indebted to Lambeth in any amount growing out of said contract. By cross bill he asserted that Lambeth had been overpaid in the sum of $4,226.86 and that, in addition, Lambeth owed him $568 which he had incurred as traveling expenses and $500 he, Mallett, had paid his attorneys, both obligations having been incurred by him as a result of the breach of the contract by Lambeth.

Lambeth, in his answer to the cross bill, denied he was indebted to Mallett.

The chancellor found and decreed that Mallett was indebted to Lambeth in the sum of $5,209.93. In arriving at this amount he disallowed the sum of $2,347.70 which had been credited by Mallett to the mechanical phase of the contract. He found that said amount had been erroneously credited by Mallett to Lambeth with the wrongful purpose on the part of Mallett to profit in that amount as against the City of Greenville.

This was a holding against Lambeth from which he did not appeal and the correctness of it is not before us. The chancellor denied Mallett credit in the total sum of $7,713.47, which was the aggregate amount charged by Mallett to the mechanical account for work and labor of eleven different persons who were supposed to have contributed labor to the mechanical phase of the work. The chancellor dismissed Mallett's cross bill, and, as above-stated, entered a personal decree against him in said amount of $5,209.93. From this decree Mallett appealed here.

The determining question on this appeal is whether the eleven different parties whose services were chargd against Lambeth did or did not perform services on the mechanical system of the manufacturing plant. Able counsel for Mallett states the question for decision in these words: ''The only issue made by Lambeth was that some of the sums which were expended by Mallett should have been charged to some phase of the contract rather than to the mechanical phase of the contract, which was the phase for which Lambeth was responsible.'' This, in the main, was a question of fact for the chancellor to pass upon.

We are of the opinion, after a careful reading of all of the evidence in this record, that the chancellor had substantial testimony to support his conclusions and that his decree should be affirmed. We have also concluded

that this is a case which may very properly be affirmed by a memorandum opinion. It involves no principle of law of especial interest to the Bench and Bar of the State, and it is unlikely that the questions here involved will arise in another suit. The record consists of five volumes and the testimony covers some seven hundred pages of legal cap paper. To undertake to assemble and correlate this testimony pro and con would prolong this opinion to unreasonable length. It is sufficient to say, we think, that there was ample testimony to sustain the finding of the chancellor that the foregoing eleven charges to Lambeth were not justified under the terms of the contract and the facts the chancellor might have, and evidently did, deduce from the oral testimony and the exhibits included within this record.

Affirmed.

*Hall, Kyle, Holmes* and *Gillespie, JJ.,* concur.